**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY ANN BELNAP, | ) | CASE NO. 1:22-CV-00202-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | MEMORANDUM ORDER & OPINION |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Plaintiff, Kelly Ann Belnap ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 9). For the reasons set forth below, the Court OVERRULES the Claimant's Statement of Errors and AFFIRMS the Commissioner of Social Security's decision denying Claimant POD and DIB.

**II. Procedural History**

Claimant filed applications for POD and DIB on September 13, 2019 alleging a disability onset date of November 1, 2017. (ECF No. 8, PageID #: 55). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 55). On December 10, 2020, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 55). The ALJ issued a written decision on January 8, 2021 finding Claimant was

not disabled. (ECF No. 8, PageID #: 52). The ALJ's decision became final on December 7, 2021

when the Appeals Council declined further review. (ECF No. 8, PageID #: 43).

Claimant filed her Complaint on February 7, 2022 to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos.11, 14, 16).

Claimant asserts the following assignment of error: "The ALJ's RFC is unsupported by substantial

evidence as the ALJ failed to properly consider the opinion of the claimant's psychiatric treating

source and consultative examining psychologist, Dr. Josell." (ECF No. 11, PageID #: 675).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant has alleged she is unable to perform fulltime work
> activity due to the combined effects of her physical and mental
> symptoms and limitations. . . . She reported that she is able to leave
> her home to shop and go grocery shopping. She reported she has
> difficulty tolerating stress as it makes her "moody" and she tends to
> walk away from stressful situations. (Function report, Hearing
> Testimony).

(ECF No. 8, PageID #: 61). A vocational expert also testified that a similarly-situated person could

be off task up to ten percent of the workday and remain employed. (ECF No. 8, PageID #: 106).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's mental health records and symptoms:

> [T]he record during the relevant period indicated that she only
> recently established treatment for her mental symptoms in October
> 2019 with her primary care provider. Prior to that, progress notes
> did not demonstrate significant mental health concerns or abnormal
> mental status findings. Her previous primary care physician, Martha
> Hackett, MD, consistently noted normal mental status throughout
> 2018 and early 2019. The claimant complained of depression during
> a visit with her current primary care physician Mihaela Donca, MD,
> on October 11, 2019, when a Patient Health Questionnaire (PHQ-9)
> screening score of 12 reflected moderate depression. Despite this,

2

she presented with appropriate mood and affect, and good eye contact on examination. Her primary care physician elected conservative management and initiated Wellbutrin and Buspirone for her depressive symptoms. (Exhibit B9F, p. 19-21). Prior to that time, PHQ-2 and PHQ-9 scores were generally negative for depression and she did not report any symptoms, suggesting they were not as bothersome throughout the period as she has currently alleged.

Although claimant reported significant symptoms at [the] time [of] the January 2020 consultative psychological examination, PHQ scores at her December 2019 and February 2020 visits with primary care were not consistent with those reports. PHQ-9 on December 13, 2019 was 10, consistent with moderate depression, but improved to 6 on February 17, 2020, consistent with mild symptoms. (Exhibit B9F). These reports to her treating source reflected significantly less symptomology and functional limitation that she depicted during the one-time consultative examination.

The claimant continued to engage in conservative management of her symptoms, and routinely denied symptoms of mania related to her bipolar disorder. She reported depressed mood at times, but subjective reporting remained in the mild to moderate range throughout this period. After her primary care physician prescribed Wellbutrin and Buspirone in October 2019, there were no significant adjustments to her psychotropic medications during the relevant period reflective of uncontrolled symptoms or functional decompensation. The claimant testified that she saw a counselor for a "few months" in 2020, but there were no other behavioral health interventions. The current record did not contain any records from this provider, but her representative advised that the record was complete. At the most recent visit with her primary care provider who prescribed her psychotropic medications, she denied depression on the PHQ-2. (Exhibit B10F, p. 3).

As a whole, the evidence revealed that the claimant treated for depression and bipolar disorder on a routine, conservative basis starting in 2019, and had apparently managed her symptoms without medication prior to that time based on the absence of complaints to her providers. She may experience difficulty with stress tolerance at times that would interfere with complex, stressful tasks or intense social interactions, but she managed her routine daily activities without symptom exacerbations or need for more intensive behavioral health interventions, such as inpatient treatment. The claimant's own subjective statements in the course of her application and appeal also suggest that her physical symptoms were

3

the primary reason for her discontinuing her most recent work activity, not a pattern of mental symptoms that were interfering with her functioning.

(ECF No. 8, PageID #: 62–63).

### C. Relevant Opinion Evidence

There are two opinions at issue in this case. The first opinion was authored by an unknown provider from Lake Health Internal Medicine. (ECF No. 8, PageID #: 518–22). The ALJ summarized the opinion in her decision:

> The record contained a questionnaire received from Lake Health Internal Medicine dated October 31, 2019, but the printed name was illegible and the document was unsigned. This questionnaire was unreadable for the most part, but noted the claimant had some difficulties with concentration. This source did not specify the functional difficulties the claimant experienced from concentration deficits as they related to her ability to perform work activity. (Exhibit B5F). To the extent this was suggesting she was unable to sustain concentration to perform work, this opinion was offered at a time in the record that the claimant had only recently complained of any depressive symptoms, and had just started psychotropic medications about three weeks prior. (Exhibit B9F, p. 19-21).

(ECF No. 8, PageID #: 63–64). The ALJ found that the "opinion [was] vague and lack[ed] sufficient support to be persuasive." (ECF No. 8, PageID #: 64).

Next, the ALJ summarized the opinion of Dr. Paul Josell, Psy.D. and why she found his opinion partially consistent with the evidence:

> The undersigned has also considered the opinion of the consultative examining psychologist, Dr. Josell, who saw the claimant for a one-time evaluation on January 6, 2020 (Exhibit B6F). He opined the claimant's ability to relate[] to others appeared impaired to the extent that she reported history in various interpersonal relationships, but he noted this was "particularly" the romantic partners in her life, which would not be reflective of her ability to engage in less-intensive, more superficial interactions with others. Dr. Josell opined the claimant's ability to understand and follow directions did not appear to be significantly impaired, which was generally consistent with her presentation in following directions

4

during the clinical interview, as well as her ability to carry out instructions in her medical care. This conclusion is generally supported by the evidence as a whole, as the claimant did not have a history of cognitive problems and routinely denied memory difficulties to her treating sources. Dr. Josell opined that the claimant would have impairment in her ability to maintain attention, concentration, persistence, and pace, to the extent that she reported problems staying focused and consistently carrying out expected duties in work and personal areas of her life due to mood disturbance. This was not fully consistent with the claimant's reports during that exam that she had left her "on and off" sales job of over 20 years due to problems using the computer due to her ongoing neck and upper extremity problems. The claimant did not demonstrate significant deficits of attention on mental status examinations throughout the period, and did not present as distracted by internal or external stimuli. Finally, Dr. Josell opined the claimant had impaired ability to withstand stresses and pressures of work due to her "medical issues." This is out of the scope of his specialization in psychology. The objective evidence did not demonstrate subjective symptom levels consistent with a conclusion that she could not tolerate any types of work stress. As a whole, Dr. Josell's opinion was only variably consistent with the substantial evidence as a whole and lacked full support from his observations

(ECF No. 8, PageID #: 64).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine with myelopathy and radiculopathy, status-post discectomy, fusion, and allograft at C5-6; thoracic stenosis; right rotator cuff tear, status-post surgical repair; major depressive disorder; bipolar disorder; and borderline personality features (20 CFR 404.1520(c))

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations:

- The claimant can occasionally push and pull with bilateral upper extremities, and can occasionally reach with the bilateral upper extremities.
- The claimant can frequently climb ramps and stairs, and stoop.
- The claimant can occasionally crouch and crawl.
- The occasionally feel bilaterally.
- The claimant can never climb ladders, ropes, and scaffolds.
- The claimant should never be exposed to unprotected heights or dangerous moving mechanical parts.
- The claimant should avoid concentrated exposure to extreme cold and wetness.
- The claimant can understand, remember, and carry out simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work).
- The claimant cannot perform tasks that require fast pace or high production quotas.
- The claimant can tolerate occasional changes in a routine work setting.
- The claimant can superficially interact with others. "Superficial" interaction is defined as work that does not involve any work tasks such as arbitration, negotiation, confrontation, being responsible for safety of others, or directing work of others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

However, even when there is substantial evidence, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Similarly, an ALJ's decision cannot be upheld, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental security income or DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

## C. Discussion

Claimant raises one issue on appeal. She argues that substantial evidence does not support the RFC because the ALJ failed to adequately explain why she discredited the findings of Dr. Josell and Lake Health Internal Medicine. (ECF No. 11, PageID #: 684).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27,

2017. [1] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

The Court finds that substantial evidence supports the ALJ's credibility findings of the opinions of Dr. Josell and Lake Health Internal Medicine. Further, the Court finds that the ALJ established a logical bridge between the record and its findings.

### a. Dr. Josell

Claimant argues the ALJ's finding that Dr. Josell's opinion was "only variably consistent with the substantial evidence as a whole and lacked full support from his observations" was unsupported by substantial evidence. (ECF No. 8, PageID #: 64; ECF No. 11, PageID #: 688). She

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

contends that the ALJ gave "no meaningful explanation as to which evidence contradicted Dr. Josell's opinion, failed to cite to any specific evidence of record that contradicted the opinion, and did not provide any clue as to her reasoning." (ECF No. 11, PageID #: 687). She argues the ALJ "failed to properly consider the supportability or consistency of Dr. Josell's opinion," the two most important consideration factors under C.F.R. § 404-1520c(b)(2), and mischaracterized the evidence. (ECF No. 11, PageID #: 686, 688). Finally, Claimant argues that the ALJ did not create a logical bridge and that if she had adopted Dr. Josell's attention and concentration limitation, Claimant would not have been able to work in accordance with the vocational expert's recommendations. (ECF No. 11, PageID #: 689).

The Commissioner responds that ALJ "thoroughly" explained her findings and that even if the ALJ erred—which she did not—it was harmless error. (ECF No. 14, PageID #: 707). Moreover, the Commissioner argues that Claimant failed to "point to a single restriction that the ALJ allegedly failed to adopt by Dr. Josell." (ECF No. 14, PageID #: 707). In her reply, Claimant argues that the ALJ only cited one source in support of her credibility finding and contends that "any argument that an ALJ's summation of the [evidence] . . . constitutes proper evaluation of a medical opinion cannot stand" under the appropriate standard. (ECF No. 16, PageID #: 715 (citing 20 CF.R. § 404.1520c(c)(2)). She also argues that Defendant seeks to "diminish the articulation standard published only a few years ago. (ECF No. 16, PageID #: 715). However, Claimant failed to address the Commissioner's argument that the RFC adopted Dr. Josell's recommendations and that the ALJ caused no harm.

Dr. Josell's opinion was made up of four limitations which the ALJ found "only variably consistent with the substantial evidence as a whole and lacked full support from his observations."

(ECF No. 8, PageID #: 64). In her analysis, the ALJ explained why she found each limitation credible or uncredible:

> The undersigned has also considered the opinion of the consultative examining psychologist, Dr. Josell, who saw the claimant for a one-time evaluation on January 6, 2020 (Exhibit B6F). He opined the claimant's ability to relate[] to others appeared impaired to the extent that she reported history in various interpersonal relationships, but he noted this was "particularly" the romantic partners in her life, which would not be reflective of her ability to engage in less-intensive, more superficial interactions with others. Dr. Josell opined the claimant's ability to understand and follow directions did not appear to be significantly impaired, which was generally consistent with her presentation in following directions during the clinical interview, as well as her ability to carry out instructions in her medical care. This conclusion is generally supported by the evidence as a whole, as the claimant did not have a history of cognitive problems and routinely denied memory difficulties to her treating sources. Dr. Josell opined that the claimant would have impairment in her ability to maintain attention, concentration, persistence, and pace, to the extent that she reported problems staying focused and consistently carrying out expected duties in work and personal areas of her life due to mood disturbance. This was not fully consistent with the claimant's reports during that exam that she had left her "on and off" sales job of over 20 years due to problems using the computer due to her ongoing neck and upper extremity problems. The claimant did not demonstrate significant deficits of attention on mental status examinations throughout the period, and did not present as distracted by internal or external stimuli. Finally, Dr. Josell opined the claimant had impaired ability to withstand stresses and pressures of work due to her "medical issues." This is out of the scope of his specialization in psychology. The objective evidence did not demonstrate subjective symptom levels consistent with a conclusion that she could not tolerate any types of work stress.

(ECF No. 8, PageID #: 64).

The ALJ clearly explained why she found each limitation persuasive or unpersuasive. For the first limitation, interactions with others, the ALJ explained that Dr. Josell observed that any impairments with others related to her romantic relationship and that he distinguished this from "less-intensive, more superficial interactions with others." (ECF No. 8, PageID #:64). She then

11

noted that Dr. Josell's opinion that Claimant's ability to understand and follow directions did not appear to be significantly impaired and that this was consistent with her following instructions in her clinical interview and overall health care regiment. (ECF No. 8, PageID #: 64). The ALJ also noted that the limitation was consistent with the record as Claimant did not have a history of cognitive issues and regularly denied memory difficulties with other treating sources. (ECF No. 8, PageID #: 64). The ALJ did not entirely agree with Dr. Josell's limitation regarding Claimant's ability to maintain attention, concentration, persistence, and pace. (ECF No. 8, PageID #: 64). She found that it was inconsistent with Claimant's reports during the exam and her history working a sales job "on and off" for over twenty years. (ECF No. 8, PageID #: 64). Contrary to Dr. Josell's recommendation, the ALJ noted that Claimant did not demonstrate significant attentional deficits on mental status examinations and did not appear distracted by internal or external stimuli. (ECF No. 8, PageID #: 64). Finally, the ALJ explained that she did not find Dr. Josell's final limitation persuasive because it was beyond his area of expertise and that it failed to "demonstrate subjective symptom levels consistent with a conclusion that [Claimant] could not tolerate any work stress." (ECF No. 8, PageID #: 64). Overall, the ALJ created a logical bridge by explaining her determinations about each limitation and how they were or were not supported by the record and consistent with other reports. As the Commissioner correctly notes, an ALJ need not use the exact words "supportability" or "consistency" to consider these factors in its credibility analysis. (ECF No. 14, PageID #: 705 (citing *Hannahs v. Comm'r of Soc. Sec.*, No. 3:20-cv-01905, 2021 WL 8342817, *11 (N.D. Ohio Dec. 15, 2021) (noting that other "courts have already offered the opinion that an ALJ 'need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors," and a reviewing court is able to

follow the ALJ's reasoning")))). The Court therefore finds that substantial evidence supports her credibility finding.

Moreover, the ALJ incorporated Dr. Josell's limitations in her RFC restrictions, undermining Claimant's argument that she was prejudiced by the ALJ's credibility finding or that the ALJ "mischaracterized" the evidence. The first limitation—interacting with others—was incorporated into the RFC through the restriction that "the Claimant can superficially interact with others." (ECF No. 8, PageID #: 60). Dr. Josell's second limitation related to Claimant's ability to understand and follow directions and was adopted by the RFC restriction that "claimant can understand, remember, and carry out simple, routine, and repetitive tasks, but not at a production rate pace." (ECF No. 8, PageID #: 60). Dr. Josell's third limitation, regarding Claimant's ability to maintain attention, concentration, persistence, and pace, corresponds with the restrictions that "claimant can understand, remember, and carry out simple, routine, and repetitive tasks, but not at a production rate pace" and "claimant cannot perform tasks that require fast pace or high production quotas." (ECF No. 8, PageID #: 60). This contradicts Claimant's specific argument that the ALJ did not adopt Dr. Josell's attention and concentration limitation. (ECF No. 11, PageID #: 689). Finally, the ALJ incorporated Dr. Josell's final limitation—"impaired ability to withstand stresses and pressures of work"—by recommending Claimant be restricted from "tasks that require fast pace or high production quotas." (ECF No. 8, PageID #: 60). Thus, Dr. Josell's full opinion is incorporated into the RFC, and Claimant fails to demonstrate that she was prejudiced by the ALJ's credibility finding. Accordingly, the Court will not disturb the ALJ's decision on this matter.

### b.  Lake Health Internal Medicine

Claimant finally argues that the ALJ's rationale for finding the Lake Health Internal Medicine record unpersuasive is "woefully inadequate" because the ALJ "simply dismisses it as

'unreadable for the most part' and lacking the assessment of specific functional limitations.'" (ECF No. 11, PageID #: 688). This was not a harmless error she argues as the opinion alleged "significant deficits in attention and concentration" which are incompatible with the vocational expert's recommendations. (ECF No. 11, PageID #: 689). The Commissioner responds that the ALJ reasonably found the medical source statement from Lake Health unpersuasive because it failed to propose any functional limitations. (ECF No. 14, PageID #: 708 (citing *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018))). Instead, the opinion noted that that Plaintiff had pain in her neck and shoulders and poor concentration. (ECF No. 1, PageID #: 708). The Commissioner also points out that the ALJ noted that it was unclear who authored the opinion as the record was illegible and did not have a signature. (ECF No. 14, PageID #: 708 (citing *Landsaw v. Sec'y of HHS*, 803 F.2d 211, 214 (6th Cir. 1986)). In her reply, Claimant again argues that the ALJ only cited one source in support of her credibility finding and contends that "any argument that an ALJ's summation of the [evidence] . . . constitutes proper evaluation of a medical opinion cannot stand" under the appropriate standard. (ECF No. 16, PageID #: 715 (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ reviewed a record from Lake Health Internal Medicine and found it unpersuasive. (ECF No. 8, PageID #: 63–64). She summarized the record and explained why she found it unpersuasive in her decision:

> The record contained a questionnaire received from Lake Health Internal Medicine dated October 31, 2019, but the printed name was illegible and the document was unsigned. This questionnaire was unreadable for the most part, but noted the claimant had some difficulties with concentration. This source did not specify the functional difficulties the claimant experienced from concentration deficits as they related to her ability to perform work activity. (Exhibit B5F). To the extent this was suggesting she was unable to sustain concentration to perform work, this opinion was offered at a time in the record that the claimant had only recently complained of

14

any depressive symptoms, and had just started psychotropic
medications about three weeks prior. (Exhibit B9F, p. 19-21).
Therefore, this opinion is vague and lacks sufficient support to be
persuasive.

(ECF No. 8, PageID #: 63–64).

Substantial evidence supports the ALJ's finding that this record is unpersuasive. First, the

ALJ could not fully review the 20 C.F.R. § 404.1520c(c) factors because the name of the treating

source was illegible, the document was unsigned, and the questionnaire was "unreadable for the

most part.[2]" (ECF No. 8, PageID #: 518–22). It was therefore impossible for the ALJ to consider

several subsection (c) factors including the practitioner's relationship with Claimant or medical

specialization. *See* § 404.1520c(c). Nevertheless, the ALJ reviewed the record, noting that the

questionnaire mentioned difficulties with concentration, and ultimately found that it lacked enough

support to be persuasive. (ECF No. 8, PageID #: 63–64). The ALJ also noted that the record

contained no functional limitation recommendations related to concentration or other abilities.

(ECF No. 8, PageID #: 63–64). Despite the ALJ finding that the record was unpersuasive and

contained no functional limitation recommendations, the ALJ included limitations to address the

difficulties with concentration noted in the record. As discussed above, the ALJ incorporated

concentration and attention restrictions in the RFC stating that "claimant can understand,

remember, and carry out simple, routine, and repetitive tasks, but not at a production rate pace."

(ECF No. 8, PageID #: 60). Thus, in addition to substantial evidence supporting the ALJ's

credibility finding, the record demonstrates that the ALJ included limitations to address Lake

---

[2] The Court notes that Petitioner does not contest that the record was illegible, unsigned,
and unreadable nor does the Petitioner provide any additional insight into the origin of the
record.

15

Health Internal Medicine record's opinion in the RFC. As substantial evidence supports the ALJ's credibility finding and the RFC, the Court will not disturb the ALJ's findings.

**VI. Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner of Social Security's final decision denying Claimant Period of Disability and Disability Insurance Benefits.

**IT IS SO ORDERED.**

Dated: December 14, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE